Percy G. Ligon and Elizabeth L. H. Ligon v. Commissioner. Grover C. Ligon v. Commissioner.
Ligon v. Commissioner
Docket Nos. 46914, 46915.
United States Tax Court
T.C. Memo 1954-222; 1954 Tax Ct. Memo LEXIS 23; 13 T.C.M. (CCH) 1127; T.C.M. (RIA) 54328; December 16, 1954, Filed Joshua W. Miles, Esq., First National Bank Building, Baltimore, Md., and D. Sylvan Friedman, Esq., for the petitioners. A. Russell Beazley, Jr., Esq., and Philip A. Bayer, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in petitioners' income tax for 1949 as follows: Docket
No.
Petitioner
Deficiency
46914
Percy G. Ligon and
Elizabeth L. H. Ligon
$1,406.54
46915
Grover C. Ligon
2,224.95
The issue is whether petitioners' share of partnership income was understated as the result of (1) a claimed bad debt deduction, and (2) a claimed reduction of gross income because the partnership paid a compromise settlement of a lawsuit. Findings of Fact Percy G. Ligon, hereinafter referred to as Percy, *24 and Elizabeth L. H. Ligon, husband and wife, resided in Montgomery County, Maryland, and filed a joint income tax return for 1949 with the collector of internal revenue for the district of Maryland. Grover C. Ligon, hereinafter referred to as Grover, a resident of Baltimore, Maryland, filed his individual income tax return with the same collector. During 1949 Percy and Grover, as partners, engaged in the general contracting business under the firm name of Ligon and Ligon. This partnership will be referred to as the 1949 partnership. The 1949 partnership return for the business was filed with the collector of internal revenue for the district of Maryland. On June 15, 1945, Percy and Grover entered into an agreement with George W. Welsh, Jr., wherein they agreed to sell him a 1/10th interest in the partnership. This partnership will be referred to as the 1945 partnership. The total capital value of the 1945 partnership as of June 15, 1945, was arbitrarily stated as representing a net worth of $100,000, which included lands, buildings, machinery and good will. Welch agreed to pay Percy and Grover $10,000 representing a 1/10th interest in the 1945 partnership. This amount was to *25 be paid out of Welsh's share of the profits and it was to be paid at the end of each calendar year, and the amount to be paid was not less than 10 per cent of the profits and was to be paid from year to year until fully paid. Welch was to participate in the total net profits and losses of the business "from June 15, 1945, to June 15, 1950." The agreement established the yearly compensation for each of the three partners (Percy, $8,400; Grover, $7,200; Welsh, $5,400). This compensation was to be charged as a job expense and deducted in arriving at net income. The expressed intention, as stated in the agreement, was that the agreement was "not entered into because of the necessity of financial need but with the thought and intent of adding greater interest which will increase the prestige and success of the business," and in addition some financial compensation to Welsh. At the time this agreement was prepared Welsh was employed by the Baltimore County Metropolitan District as superintendent of outside field work. The following journal entries were used to give full effect to the June 15, 1945, agreement: Due from G. W. Walsh, Jr. *
$10,000.00
P. G. Ligon, personal a/c
$ 5,300.00
G. C. Ligon, personal a/c
4,700.00
(To set up amount due for purchase of 10% inter-
est in firm)
P. G. Ligon, capital a/c
5,300.00
G. C. Ligon, capital a/c
4,700.00
George W. Walsh Jr., capital a/c
10,000.00
(To set up amount of capital transferred to G.
W. Walsh, Jr.)
Good-Will
76,998.67
P. G. Ligon, personal a/c
40,819.30
G. C. Ligon, personal a/c
36,179.37
(To set up good-will represented by the difference
between depreciated value of fixed assets
($23,001.33 and $100,000.00)
P. G. Ligon, personal a/c
10,600.00
G. C. Ligon, personal a/c
9,400.00
P. G. Ligon, capital a/c
10,600.00
G. C. Ligon, capital a/c
9,400.00
(To transfer to capital account amount necessary
to increase to pro-rata share of $100,000.00
stated capital)
*26 By letter dated July 24, 1946, Welsh notified Percy and Grover that he was dissolving the 1945 partnership. In his letter Welsh related how he was dissatisfied with his reduced drawing account (from $5,400 a year to $3,600), and how he was in disagreement with the business accounting, and the stated assets of the partnership. On July 31, 1946, the credit balance in Welsh's capital account was $4,601.54 and the $10,000 account receivable from Welsh was unpaid. In November 1946 Welsh filed a bill of complaint in the Circuit Court of Baltimore City against Percy and Grover. Welsh's complaint prayed that the 1945 partnership be declared legally dissolved and that a receiver be appointed to liquidate and distribute the remaining assets. Three years later Percy and Grover settled Welsh's suit and in return for his release of all claims against them, they paid him $2,800. A check dated November 8, 1949, for $2,800, payable to Welsh, was drawn by Grover for Ligon & Ligon, Inc. [1] Ligon & Ligon, Inc., was reimbursed by a check drawn by Grover for the 1949 partnership. [2]
*27 The 1949 partnership charged this $2,800 to contract cost and reduced 1949 gross receipts by that amount. The partnership also deducted as a bad debt the amount of $5,398.46, which represented the difference between the account receivable from Welsh of $10,000 and the balance in Welsh's capital account of $4,601.54. The payment of $2,800 to Welsh as a compromise in settlement of a lawsuit was an ordinary and necessary business expense for Percy and Grover in 1949, and each of the partners is entitled to half of the deduction. Opinion The first issue we shall consider is whether respondent properly disallowed a bad debt deduction of $5,398.46 for the 1949 partnership. Respondent contended that Welsh was not indebted to the 1949 partnership or to its inividual partners, Percy and Grover. On the other hand, petitioners maintain that the difference between Welsh's account receivable and Welsh's capital account was a bad debt which was deductible in 1949. Under section 23(k)(1) of the 1939 Code, a debt which becomes worthless within the taxable year shall be allowed as a deduction. The requirements of this section are that there must be a debt and that a debt must be shown to *28 be worthless within the taxable year. We think that petitioners have failed to prove compliance with either one of the two requirements of section 23(k)(1), and therefore are not entitled to the claimed deduction. Welsh was not unconditionally obligated to pay Percy and Grover the $10,000. We say this, notwithstanding the bookkeeping entries, for the entries in the books do not create debts or obligations. Welsh was only conditionally obligated to pay Percy and Grover the $10,000 if the business was operated at a profit. Even then Welsh's obligation was limited to 10 per cent of the profit for a period of five years. If the 1945 partnership operated at a loss, under the agreement Welsh paid no part of the $10,000. The most that can be said regarding the $10,000 was that Welsh was entitled to certain profits of the 1945 partnership, less $10,000. On the record we can not find that there was an unconditional debt within the meaning of section 23(k)(1). None of the principals of the alleged bad debt transaction testified at the hearing. Nor do we find in the record the note or other evidence of the indebtedness. If under the agreement there was no obligation to pay the $10,000, *29 there was no obligation to pay part of it as the petitioners now contend. Continuing with the second requirement for a claimed bad debt deduction, even if we assume for the sake of argument that there was a bona fide debt, there is no proof that the debt was worthless in 1949. We do not know whether Percy and Grover made any effort to collect the money or any part of it. None of the three principals testified at the hearing, nor do we know whether Welsh could have paid the money if an attempt had been made to collect it. Petitioners have not met the requirements of section 23(k)(1). At the risk of overworking the first issue we point out that the alleged bad debt represents the money Percy and Grover paid Welsh, either as yearly compensation or as a drawing account. No evidence in the record shows that Welsh was obligated to reimburse the 1945 partnership for his yearly compensation. Petitioners' position is similar to an employer, who, after discharging an employee, seeks to recover the salary paid to the employee during the period of employment. On the first issue respondent must be sustained in the disallowance of the claimed 1949 bad debt. Next, we must determine whether *30 the compromise payment of $2,800 was a proper reduction of the 1949 partnership gross receipts. At the outset there is no reason in this case to deny the deduction because the allowance would frustrate a clearly defined public policy, . Nor does the rule respecting penalties, deductions of which are disallowed because the allowance would mitigate the punishment, enter this case. . With certain exceptions, the net income of a partnership should be computed in the same manner and on the same basis as the income of an individual, section 183, 1939 Code, and individuals carrying on business in partnership shall be liable for income tax only in their individual capacity, section 181, 1939 Code. There is no doubt that the litigation and the subsequent settlement grew directly out of business dealings between the former partners. The settlement was directly connected with and proximately resulted from the business activities of the partners. The settlement was directly connected with and proximately resulted from the business activities of the partners. These *31 facts bring the case within the rule of the Supreme Court in Kornh1user v. , and the many cases following it. In the Kornhauser case attorney fees paid in defense of a suit for an accounting were held deductible from gross income as ordinary and necessary business expenses. Though the Kornhauser case embraced only legal fees, in , the Board held that "the reasoning employed [in the Kornhauser case] applies equally to the compromise payment made to settle the law suit." See also . Our holding that the settlement was an ordinary and necessary business expense for Percy and Grover, each being entitled to half, does not imply that the settlement was an ordinary and necessary business expense of the 1949 partnership. This expense was an individual expense of Percy and Grover and as such each is entitled to half. Decisions will be entered under Rule 50. Footnotes
*. G. W. Walsh, Jr., is the same person as George W. Welsh, Jr.↩
1. The record is not informative as to how, why, and when Ligon & Ligon, Inc., was formed. ↩
2. The check was dated November 30, 1948, but it was endorsed by the payor bank on December 1, 1949.↩